In re Harold K. KELSEY Priscilla L. Kelsey, Debtors.

Hamp L. ISABEL, Plaintiff,

v.

Harold K. KELSEY, Defendant.

Bankruptcy No. BK 79–00171–2–L.

United States Bankruptcy Court, W. D. Kentucky.

Feb. 13, 1981.

Jan C. Morris, Louisville, Ky., for defendant.

Ken Baker, Louisville, Ky., for plaintiff.

## MEMORANDUM AND ORDER

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

This suit was brought because of an alleged breach of performance of a partnership buy-sell agreement. Plaintiff alleges that the bankrupt has violated Sections 17 and 14 of the Bankruptcy Act, claiming that either this particular debt should be nondischargeable, or that the bankrupt's debts generally should not be discharged.

At the trial held on May 29, 1980, we dismissed, because of plaintiff's failure to meet his burden of proof, the claims arising under all but two of the provisions under Sections 17 and 14.

We will therefore confine our inquiry to whether the bankrupt has transgressed those provisions of Sections 17 and 14 of the Act, to wit: Sec. 17(a)(2) and Sec. 14(c)(7), which would justify either denying discharge of the debt in question or discharge of all debts.

Sec. 17(a)(2) excepts from discharge debts that:

> are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or

published or caused to be made or published in any manner whatsoever with intent to deceive, or for willful and malicious conversion of the property of another.

Section 14(c)(7) precludes discharge in bankruptcy if the debtor "has failed to explain satisfactorily any losses of assets or deficiency of assets to meet his liabilities".

\* \* \* \* \* \*

At the trial, testimony was given regarding the business relationship enjoyed by the plaintiff and the bankrupt, the events and conditions accompanying the termination of that relationship, and the enmity the parties felt toward each other over the responsibility to pay debts incurred while their partnership was still viable.

From October of 1976 to December 1977 Harold Kelsey and Hamp Isabel were partners in a business operating under the name of Okolona Heating and Air Conditioning. Apparently, the business had been operating for some time under the guidance of Isabel alone before Kelsey became a partner in 1976.

On December 20, 1977, Isabel and Kelsey executed a "Sale of Business Agreement" whereby Isabel agreed to sell Kelsey his interest in Okolona Heating in consideration of Kelsey assuming all of the partnership's liabilities, paying Isabel $100.00 a week for 18 weeks, and paying to Union Financial Corporation $240.93 a month for 29 months in repayment of a loan executed by Hamp Isabel and Betty Isabel. Isabel was thus to have been paid, directly and indirectly, a total of approximately $8,786.97.

For purposes of clarifying what debts Kelsey would be assuming, a list was made of the known and existing creditors of Okolona Heating. The agreement clearly provided that the listing was not intended to be complete or exclusive. Kelsey was therefore liable both for those partnership debts which were specifically enumerated in the agreement and those which were not.

Hamp Isabel did not take the stand at the trial. In a brief submitted after the trial,

however, he elucidated his version of the circumstances surrounding the sale of the business to Kelsey. He claims that at the time the partnership was dissolved, he was primarily a "field technician", while Kelsey handled the business end of the partnership.

Isabel's withdrawal from the partnership is said to have been conditioned on his obtaining release from liability from the partnership's creditors. Isabel claims that Kelsey's position as keeper of the accounts enabled him to furnish a list of only those creditors whose release he knew Isabel could secure; and that Kelsey intentionally omitted from the list the name of one creditor who he knew would not release Isabel from liability and to whom a debt of $5,239.07 was owed. It is thus claimed that Kelsey obtained the business under false pretenses, and that the debts arising thereunder i. e. the undisclosed debt of $5,239.07 and the payments to Isabel amounting to $8,786.97, are nondischargeable.

Since Isabel's version of the facts accompanying the partnership dissolution was not testified to at trial, Kelsey's testimony did not specifically refute Isabel's claim. Kelsey did, however, confirm what was apparent by the wording of the buy out agreement—that the listing of the debts was intended to be neither exclusive or exhaustive.

Kelsey also testified that at the time of the buy out, the partnership was heavily in debt and that he took over the business because Isabel wanted to file bankruptcy. This testimony was corroborated in part by a Mrs. B. Judson, a certified financial analyst and public accountant, who testified that when Kelsey took over the company it was "floundering" and "in debt". She stated that from that time until bankruptcy, Kelsey was able to retire $14,000.00 in old debt. Kelsey claimed the figure was closer to $20,000.00.

Most of the rest of the testimony centered on events which occurred after the Kelsey-Isabel relationship was severed.

Shortly after Kelsey became the sole proprietor of Okolona Heating, he sought to incorporate. The matter of incorporation was handled by the attorney who represents Isabel in this proceeding. Kelsey claims that he never received the certificate of incorporation, incurred no debts in the name of the corporation, and that in fact was totally unaware that the business was even incorporated until being so advised by his accountant, Mrs. Judson. For reasons not readily apparent, Mrs. Judson recommended against this form of enterprise, and, on January 4, 1979, Kelsey dissolved the corporation as one that had never operated.

Kelsey did not decide to file bankruptcy until after the corporation's dissolution, and, on February 2, 1979, an order for relief was entered. Twenty-eight days later, Okolona Heating and Air Conditioning incorporated in the state of Delaware. Its stockholders were Ola Mae Raisor, receptionist at Okolona Heating; Mrs. Judson, accountant for the firm; and Eddie Washburn, an unemployed roofer with no ostensible connection with the company.

Based on the testimony of Mrs. Judson, it appears that it was her idea to incorporate in Delaware. She did not ask Kelsey for his permission to do so, but merely asked if she could use the company's name. To that he assented. When the dust from the incorporation action had cleared, Kelsey, former owner and operator of Okolona Heating, found himself in the employ of the company as its sales manager, answerable to people who days before were answerable to him; his former accountant, receptionist, and roofer friend.

Judson claims to have been spurred by benevolent motives in choosing the people she did to serve as stockholders. She testified that Raisor and Washburn were picked because they could use the money if the shares ever became valuable. Washburn, though wholly inexperienced in heating and air conditioning work, was also picked because it was thought he might bring in business. No consideration was paid by anyone for the stock.

Once this litigation began, Washburn, obviously less impressed by the possible value

of his stock than concerned with becoming entangled in a business mess he knew he wanted no part of, gave his stock back to Mrs. Judson. According to Washburn's testimony at trial and on deposition, Kelsey approached him while he was "laid up with a bad back" and asked him to become a shareholder in a corporation he was forming. Washburn agreed to take stock as a favor to Kelsey.

Washburn was under the impression at the time that Kelsey ran Okolona Heating. The same impression was had by several other witnesses who testified that on occasions subsequent to the formation of the Delaware corporation, Kelsey held himself out as the "owner" of Okolona Heating.

Kelsey, however, stated at the trial that he was unaware of the second incorporation and that when the new corporation was finally formed, he was merely its sales representative. He further claimed that he told customers that he was the owner of the business as a matter of convenience to the corporation, directing them to make checks payable to him as the owner so he could immediately cash them and use the proceeds to meet the corporation's payroll. He offered no explanation as to why he gave non-customers the impression that he was the owner.

\* \* \* \* \* \*

With that recapitulation of the record, we must now determine whether it demands a denial of discharge under the relevant subsections of Sec. 17 and Sec. 14 of the Act.

Both of these grounds share common characteristics, among the most elemental being the burden the claimant bears in proving his case. Sec. 17 is to be read conjunctively with Sec. 14[1], and the appropriate rule under Sec. 14 provides: "At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the facts essential to his objection".[2]

Under that rule, once a *prima facie* case has been made by the plaintiff, the defendant then must carry not the burden of *proving*, but only the lighter burden of *going forward* to rebut the presumption raised.[3]

Incumbent upon the complainant is the duty to raise, at the very least, an inference of wrongdoing by the bankrupt. In this case, we strain in trying to find that the plaintiff has met that duty regarding the claim that the debt is nondischargeable for false pretenses under Sec. 17(a)(2).

The gravamen of the claim was not expanded upon at the trial. Almost all of the proof focused on events more relevant to the objection under Sec. 14(c)(7) than to Sec. 17(a)(2). For that reason, those facts arising *after* Kelsey's purported misrepresentations about Okolona Heating's debts are of limited applicability.

The general rule is that fraud must exist at the inception of the debt.[4] Statements or actions which were neither false nor fraudulent when acted upon will not be made so by the happening of subsequent events.[5] A promisor's subsequent conduct may, however, reflect on his state of mind at the time he made the promise, and thus be considered for determining whether he possessed the requisite fraudulent intent.[6]

In this case, the facts relating to the sequence of incorporation-dissolution-reincorporation are woefully inadequate for even that purpose. We are unable to discern any logical or factual connection between those events and the execution of the partnership buy out agreement; especially since there was little damaging testimony as to how Kelsey's acts as sole proprietor of Okolona Heating affected the debt he owed Hamp Isabel. Indeed, the testimony given regarding Kelsey's efforts to retire the partnership's indebtedness was most favorable to him.

---

**1.** 1A *Collier on Bankruptcy* Par. 17.02 at 1581 (14th ed. 1978).

**2.** Bankruptcy Rule 407.

**3.** 1A *Collier*, supra note 3, Par. 14.12.

**4.** 1A *Collier*, supra note 3, Par. 17.16[3] at 1637.

**5.** Id.

**6.** 37 *Am.Jur.*2d Fraud and Deceit § 478.

Not until after the trial, in a post-trial brief, did Isabel, who did not testify at the trial, present facts which would have laid a solid foundation for his claim. Since it lacks any indicia of reliability, cannot be judged for credibility, and was not presented in a manner that would facilitate effective rebuttal, this ex parte evidence cannot be considered.

Relief under Sec. 17(a)(2) is therefore denied.

\*      \*      \*      \*      \*      \*

As the basis for his claim that discharge should be denied the bankrupt generally under Sec. 14(c)(7), Isabel alleges that the manipulation of the organizational form of Okolona Heating shortly before and after Kelsey's bankruptcy was part of an ingenious plan concocted by Kelsey to retain one of the most valuable assets obtained as a result of his false representations—the right to use the business name "Okolona Heating and Air Conditioning".

That asset, the business name, is claimed to have been transferred so that it would not come under control of the bankruptcy court. Isabel warns us that once Kelsey is discharged, he will reclaim the business name of Okolona Heating and Air Conditioning, along with its stock, resulting in his reinstatement as the actual "owner" of the company.

Sec. 14(c)(7) requires that discharge be denied a debtor who fails to explain satisfactorily the loss or deficiency of assets to meet liabilities. The threshold question underlying a Sec. 14(c)(7) action is whether what is lost or deficient is an asset, and if so, whether it is of sufficient value to have caused a depletion in what was available to meet liabilities.

While we have no doubt that in some instances the name of a business, with all of the propitious trappings which attend its use, may be an asset as valuable as any piece of tangible property, we have trouble in this case determining what value, if any, to attribute to the name "Okolona Heating and Air Conditioning".

Isabel proposes that the business name's value is evidenced in at least two ways: by the transfer to Kelsey of the exclusive right to use the company's name, inasmuch as it constituted part of the consideration for the partnership buy out agreement; and by the effort and expense that Kelsey expended in incorporating, dissolving, and re-incorporating the business so as to retain control of its name. Though imprecise about what the actual value of the name should be, Isabel submits that it should at least equal the cost in filing and attorney's fees of Kelsey's corporate maneuvering.

A business name is one of several elements comprising good will.[7] Estimation of the worth of good will requires, among other things, consideration of the viability of the enterprise in question. Courts have generally been reluctant to accept good will as a separate asset, particularly where the business is in a financially distressed condition.[8] Likewise, the value of a bankrupt's business name will usually be so insubstantial that it cannot be considered an asset.

Although Isabel claims that the name Okolona Heating and Air Conditioning is well known in the community in which the business operates, we are skeptical about it having sufficient value to be used to offset the bankrupt's liabilities. The business itself is worthless as a going concern. It has no tangible assets about which to speak, and for all intents and purposes, its continued existence is solely dependent on the efforts of Harold Kelsey.

We realize that at the time Kelsey filed his petition he was the sole proprietor of Okolona Heating, and that he conveyed the business and its name shortly thereafter for no consideration. We are unsure as to why this was done, as no clear explanation of what was sought to be accomplished was presented at trial. We note, however, perhaps gratuitously, that the move was more ingenuous than ingenious. It appears to amount to the needless spinning of legal

---

7.  38 *Am.Jur.*2d Good Will § 6.

8.  1 *Collier on Bankruptcy*, Par. 1.19[3] at 130.-2–3 (14th ed.).

wheels by non-lawyers who, quite obviously, believed the effort to be worth more than it really was.

 Whether the name Okolona Heating and Air Conditioning will someday be valuable we cannot foretell; but at the time this petition was filed, when both the business and its proprietor were insolvent, the name was worthless. Its transfer did not result in the depletion of Kelsey's estate, and did not further impair Kelsey's ability to meet his liabilities.

Having reviewed the entire record, considered the testimony and demeanor of the witnesses at trial; having heard argument of counsel; and being otherwise sufficiently advised, upon the within findings of fact and conclusions of law,

IT IS HEREBY ORDERED that the debt owed the plaintiff, along with all other debts of the defendant, are dischargeable, and judgment is hereby entered in favor of the defendant. This is a final order.