In re Menasha HIRSCH a/k/a Alfred Melvin Hirsch, and Francis Hanna Hirsch, a/k/a Fay Hirsch, Debtors.

Samuel KAYE, Plaintiff,

v.

Menasha HIRSCH a/k/a Alfred Melvin Hirsch, and Francis Hanna Hirsch, a/k/a Fay Hirsch, Defendants.

Bankruptcy No. 80–01421–BKC–JAG.
Adv. No. 81–0125–BKC–JAG–A.

United States Bankruptcy Court, S. D. Florida.

Aug. 12, 1981.

Robert R. Frank, Frank, Strelkow & Gay, North Bay Village, Fla., for plaintiff.

Robert P. Barnett, Barnett & Kress, P.A., Miami, Fla., for defendants-debtors.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

In this adversary proceeding Samuel Kaye, a creditor, seeks to prevent the discharge of defendant-debtors, Menasha Hirsch and Fay Hirsch, husband and wife, under 11 U.S.C. Sections 727(a)(2)(A), (3), (4)(A) and (4)(D). The court has considered the testimony of each defendant given at trial and in deposition, together with the exhibits offered by plaintiff, and concludes that the defendants are not entitled to a discharge, although not all the acts of which plaintiff complains would prevent discharge.

For some years before his bankruptcy, Menasha Hirsch made a living in hotel, restaurant and catering businesses. His wife joined him in many of these enterprises, either as a business partner or as an employee. In the years immediately prior to 1978, he had investments in hotels on Miami Beach, Florida or in hotel management businesses. He then was involved with a hotel and kosher restaurant in Puerto Rico through the spring of 1979. Being unable to find work in Miami Beach at that time, in the fall of 1979 he went to New York, where he was employed by a catering company. In the summer of 1980 he operated a concession at Julene's Bungalows in the mountains, and in the fall returned to work for catering companies in New York City. At some point he began catering affairs on his own. Fay Hirsch remained in Miami Beach. She became employed as a bank teller in June, 1979 and continues in that employment. During the summer of 1980, she assisted her husband for two months at Julene's. The debtors' joint voluntary petition under chapter 7 was filed on October 30, 1980.

The couple have several adult children. Mrs. Hirsch lives with their nineteen year old daughter Shaina in the family home in Miami Beach. Mr. Hirsch lives with his mother in New York. An unmarried son, Eliyohu Sholam Hirsch (Eli), is a student and holds odd jobs, living elsewhere in New York.

11 U.S.C. § 727(a)(4)(A) prohibits discharge where a debtor "knowingly and fraudulently, in or in connection with the case, made a false oath or account." The court concludes that both debtors fraudulently made a false oath in filing their schedules by omitting several material facts. The primary failure was the entire

omission of any reference to the Julene's Bungalows concession, either in the list of debtors' businesses or jobs, or in showing income received by the debtors.

Menasha Hirsch's testimony regarding Julene's was conflicting, and the testimony conflicted with other evidence. On deposition he testified that at first he was supposed to own the concession, but he "didn't". (Plaintiffs' Exhibit No. 3, p. 19). At trial he testified that it didn't start out his, but it ended up his. It was some type of partnership with Richard Jedwab, and Hirsch testified that it made no money. However, he drew some money as salary for himself and his wife, and at deposition testified that it was taken in cash, not by check. He also testified that all the transactions of the business were in cash and that there was no business checking account. Yet the check register and bank statements from the Hirsch's Anchor Savings checking account (discussed below) show that $5,789 was deposited in that account from Julene's, with three of the five deposits having been made by check. (Plaintiff's Exhibit Nos. 5 and 6). The last deposit was made on August 29, 1980, and the court finds that the omission of and filed two months later) was knowing and fraudulent, rather than a mere oversight as the debtor testified.

The debtors also omitted showing income received from Olah Torah school. Fay Hirsch admitted that almost $2,000 was received from the school and deposited to an account she held (with her daughter) in September, 1979 and January, February and March, 1980. Although the money was owed to a corporation owned and operated by her husband and his brother, the income was received by the debtors and should have been scheduled by them. (The remaining account receivable was not scheduled, and technically need not have been because of the separate corporate identity, although in their testimony the debtors often failed to make the distinction. Neither did they schedule their ownership of the stock of the corporation. Plaintiff, however, failed to prove that the stock is of any value, and that omission is thus not a material one.)

■ An omission of property which *is* material is the failure to have listed the balance of approximately $1,000 in the Anchor Savings checking account.

■ There were other lesser, although deliberate, omissions. Standing alone they would not justify denial of discharge, but taken together they show a pattern of actions by the debtors which are evidence of the debtors' wrongful intent in the more material omissions. At trial and in deposition, Menasha Hirsch testified that he had several jobs, at $100–$150 each, paid in cash, with M & P Caterers, which were not scheduled either as jobs or as income. These occurred in September and possibly October, 1980, immediately prior to the filing of the petition on October 30th. Menasha scheduled income of $2,500 from A & D Caterers, while the W–2 form produced at plaintiff's request shows income of $3,000 for 1980 (Plaintiff's Exhibit No. 7). His employment with A & D had terminated prior to the filing of the petition and, according to his testimony, may have commenced in 1979.

■ Although the Hirsch's lived apart for the year previous to the filing of the petition, all the material omissions were of facts clearly known to both the husband and wife, and were of transactions or events in which they were both involved. The court also is satisfied that the false oath was knowing and fraudulent on the part of each. While it is rarely possible to find direct evidence of such intent, an inference can be drawn from circumstances and observation of witnesses. The testimony of both debtors, taken as a whole, showed serious gaps in credibility, both because of the pattern of events testified to, and because of her lack of candor in testifying.[1]

1. The following sequence, from the deposition of Fay Hirsch Plaintiff's Exhibit No. 2, p. 10) taken on February 17, 1981, in Miami Beach, illustrates:

Q. Where does your husband reside, Mrs. Hirsch?
A. Well, he lives down here.

■ The court does *not* find that Menasha Hirsch gave a false oath in failing to schedule the catering jobs he handled as his own business, or the income from them. Plaintiff did not establish that any of these occurred prior to the filing of the petition, and it is obviously not a bar to discharge that the post-petition jobs were not scheduled. Neither was the evidence conclusive that debtors intended to mislead the court and creditors by stating that the immediate past income tax returns were filed in Chamblee, Georgia, whereas, in fact, the debtors had not filed income tax returns for 1978 or 1979.[2]

11 U.S.C. § 727(a)(3) would deny discharge where a debtor:

... has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

■ The court concludes, that Menasha Hirsch has come within the terms of § 727(a)(3) by his failure to maintain records for the concession at Julene's Bungalows. He testified that all transactions were in cash and that no bank account was maintained for the business. While that may be a typical practice among certain persons in such businesses, a debtor seeking relief in bankruptcy cannot so easily shield his actions from the review of his creditors by his method of operation. Perfection in record keeping is not required, but creditors must reasonably be able to follow the debtor's business transactions, make intelligent inquiry, verify the oral statements and explanations of the bankrupt, and ascertain the present and past financial condition of the bankrupt with substantial completeness and accuracy. *Goff v. Russell Company,* 495 F.2d 199 (5th Cir. 1974); *McBee v. Slimon,* 512 F.2d 504 (5th Cir. 1975); *Rhoades v. Wikle,* 453 F.2d 51 (9th Cir. 1971). The fact that a business is small does not in itself justify the failure to keep records. *Baker v. Trachman,* 244 F.2d 18 (2d Cir. 1957). In this case there is not simply a failure to maintain any written records, but the testimony of Menasha Hirsch shows that he either destroyed or concealed from the court what records he kept. His testimony at trial and up on deposition is contradictory, but the records are either in New York, possibly with the partner—who did not participate in the operation—and "could be found if necessary" or they were thrown out. This conduct was not justified under all of the circumstances so as to permit the debtor to receive the benefits of a bankruptcy discharge while denying his creditors all opportunity to examine that business.

During the two years previous to filing, Menasha Hirsch held no checking account, and the only record produced of his business or employment activities was the W–2 statement (Plaintiff's Exhibit No. 7). Fay Hirsch maintained jointly with her daughter Shaina a checking account at Capitol Bank in Miami Beach, where Fay works, and another at Barnett Bank with Shaina. Fay Hirsch also holds a checking account at Anchor Savings Bank in New York jointly

---

Q. Doesn't he maintain a residence in New York?
A. Well, he is up there at times. Yes.
Q. When was the last time he was in Miami, Mrs. Hirsch?
A. When he was in Miami?
Q. Yes.
A. I think it was in November.
Q. How long was he in Miami during the month of November?
A. I don't recall. A week or two weeks.

2. An inference of an intention to mislead regarding the tax returns might be made from the apparent fear of prosecution by IRS which Menasha Hirsch exhibited at trial. Upon questioning by plaintiff's counsel he confirmed that he had refused to accept service of a subpoena duces tecum for trial, telling the process server that he was Melvin Hirsch, not Menasha Hirsch. Mr. Hirsch's explanation of his conduct was that he was afraid he would be arrested for not filing income tax returns. On the other hand, the explanation is not entirely credible because the W–2 form from A & D Caterers (Plaintiff's Exhibit No. 7) lists the debtor as *Melvin* Hirsch.

with her son Eli. Check registers and bank statements for all of these were eventually produced upon request by plaintiff. No other records showing the debtors' financial condition were kept and produced by defendants.

■ Fay Hirsch has been only an employee during the major part of this period, and although her records are very scant, it must be concluded that under the circumstances she cannot be required to have maintained better records.

■ Most of the income Menasha Hirsch has received while working in New York has been in cash, without even any W–2 statements (Plaintiff's Exhibit No. 3, p. 26), and there is no way for creditors to verify either the amount he was paid for a given job or the total income he received. However, as an employee, the circumstances are changed enough that such absence of records, standing alone, would not bar discharge. The total deficiency in records regarding his own catering business might well be such as to bar his discharge if those transactions were in questions, but because of plaintiff's failure to prove that any occurred prior to bankruptcy they cannot be considered here.

■ A further ground for the denial of discharge under 11 U.S.C. § 727(a)(2)(A) is that:

the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the debtor, within one year before the date of the filing of the petition.

The incongruity and illogic of the debtors' explanations regarding their financial affairs, and particularly the Anchor Savings checking account, leads the court to conclude that their actions were taken with the intent to hinder, delay or defraud creditors and to conceal property, specifically the income of Menasha Hirsch, within one year before the date of filing of the petition.

Initially (at deposition) Fay Hirsch did not produce records of this account, claiming that it was her son Eli's account, and it was only made available to her for use in paying living expenses. She testified that she did not keep a record of the checks, but only told her son what checks she had written. The address on the account is the family residence in Miami Beach so the bank statements are sent from New York there. However, she testified that she did not reconcile or keep the statements, but sent them to her son in New York, whose account it was. Neither she nor her husband knew the son's address, although Menasha was able to describe how to go to his place of residence. Eli does not have his own telephone, and Mrs. Hirsch testified that she formerly reached him by calling her daughter in New York who would then contact him, but since that daughter moved to Australia, Eli telephones his mother. He is a student, and although the parents knew he had some jobs, they could not name any.

Menasha Hirsch did not have any checking account during the two years prior to bankruptcy. He testified that he would send money to his wife by giving it to various of his children who had bank accounts. Fay testified that he had not been supporting her, but that she had been living on her own earnings and assistance from the children. Both testified that the children lent them money, although they could provide little detail as to times or amounts. A number of the checks on the Anchor Savings account were to their children, sometimes in the same amount as deposits shown to have been received from the children.

At trial, Fay Hirsch stated that their children "got together and opened this [account] up". The account happened to be opened on August 31, 1979, just at the time Menasha Hirsch went to New York. She does not know what other checks Eli wrote, or whether he actually used it.

At deposition, Menasha Hirsch thought his wife was making most of the house mortgage payments from her Capital Bank checking account, then thought Eli probably

made the payments from the Anchor account because Fay did not have the money, and when questioned why Fay would not write those checks, was not certain Fay had authority to write checks on the account. (Plaintiff's Exhibit No. 3, p. 43). The canceled checks show that from September, 1979 through October, 1980, fifty-two checks were written by Fay and twelve by Eli. And in the year prior to bankruptcy, there was only one month in which the house mortgage was not paid (by Fay) from this account. At trial, Mr. Hirsch admitted that the handwriting on the check register of the Anchor account was his; that Eli had deposited none of his own money in the account; and that Menasha had made every deposit shown in the check register. Nevertheless, he could not remember the sources of his deposits, including a deposit of $3,956.13 on December 31, 1979. Based on all the evidence, the court must conclude that this account was the debtors', and that the pattern of its use and of the financial transactions between the debtors and their children was designed to conceal property from their creditors.

Because of their actions, the debtors must be denied discharge. Pursuant to Bankruptcy Rule 921(a), a separate Final Judgment is being entered this date.