**In re CYCLE ACCOUNTING SERVICES, Common Bond, Clarence Robert Morgan, Debtors.**

**COMPREHENSIVE ACCOUNTING CORP., Plaintiff,**

**v.**

**Clarence Robert MORGAN, Defendant.**

**Bankruptcy No. 3–82–01700.**
**Adv. No. 3–83–0964.**

United States Bankruptcy Court,
E.D. Tennessee.

Oct. 1, 1984.

Baker, Worthington, Crossley, Stansberry & Woolf, R. Louis Crossley, Jr., Knoxville, Tenn., for plaintiff.

Ayres & Parkey, Christopher W. Martin, Knoxville, Tenn., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

Plaintiff Comprehensive Accounting Corp., holder of the largest unsecured claim against the estate, objects to discharge of the debtor. See 41 B.R. 259. Plaintiff asserts discharge should be denied pursuant to 11 U.S.C.A. §§ 727(a)(2), 727(a)(3), 727(a)(4)(A), and 727(a)(5) (1979).[1]

---

**1.** Section 727(a) of Title 11 of the United States Code enacts in material part:

(a) The court shall grant the debtor a discharge, unless—

. . . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

Though conceding the omission of an automobile from his schedule of assets, nondisclosure of certain prepetition transfers, and his failure to report all income received as a debtor in possession, debtor nonetheless maintains that he is entitled to a discharge because he did not intend to hinder, delay, or defraud his creditors through these errors or omissions. Further, the debtor contends his records are sufficient to enable creditors to ascertain his business transactions and financial condition. He also denies plaintiff's assertion that he has failed to satisfactorily explain any loss of assets or deficiency of assets to meet his liabilities.

### I

On November 5, 1982, the debtor, an accountant since 1971, filed his voluntary chapter 11 petition. He acted as a debtor in possession until November 7, 1983, when, due to his inability to formulate a plan of reorganization, an order was entered converting the case to a case under chapter 7. Plaintiff filed its complaint objecting to the debtor's discharge on December 30, 1983.[2] In its original complaint, plaintiff alleged that the debtor: (1) with intent to hinder, delay, or defraud his creditors, transferred or concealed property of the estate on or after one year before the petition filing date, Code § 727(a)(2); (2) failed to keep or preserve recorded information from which his financial condition

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
. (4) the debtor knowingly and fraudulently, in or in connection with the case—
 (A) made a false oath or account ...
 (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities ....

2. Plaintiff abandoned any effort to establish the alleged nondischargeability of its claim under 11 U.S.C.A. § 523(a)(2)(B) (1979) (false financial statement).

and business transactions might be ascertained, Code § 727(a)(3); and (3) failed to satisfactorily explain any loss of assets or deficiency of assets to meet his liabilities, Code § 727(a)(5). The court permitted plaintiff to amend its complaint to include an allegation that the debtor had knowingly or fraudulently made a false oath or account in connection with his case, Code § 727(a)(4)(A).[3]

### Statement of Financial Affairs and Schedules

The debtor admittedly failed to include a 1976 Ford motor vehicle among his scheduled assets. An insured loss of this vehicle occurred in December 1982, the month after debtor's petition was filed. Debtor's monthly operating statement for December 1982, shows a $1,433.00 payment from his insurer as income. The same statement also includes a reported expense of $1,433.00 for "auto collision repair." However, the reported expense is unrelated to the 1976 Ford, which was transferred to debtor's insurer in consideration of the $1,433.00 payment. The insurance proceeds were used to pay a $1,409.22 repair bill and secure an artisan's release of debtor's 1979 Chevrolet automobile, which is scheduled as exempt. Since these facts are not apparent from the December 1982 monthly report, plaintiff contends the debtor attempted to conceal his interest in the

3. Amendment was permitted only with respect to those allegations arising out of the same conduct, occurrences, or transactions forming the factual basis of plaintiff's original complaint. See *Littlejohn v. Englund,* 20 B.R. 957 (Bankr.E.D.Mich.1982). Plaintiff's motion to amend was denied insofar as it sought to assert that the debtor knowingly or fraudulently in connection with the case "gave, offered, received, or attempted to obtain money, property, or advantage ... for acting or forbearing to act." 11 U.S.C.A. § 727(a)(4)(C) (1979). Because no factual basis supporting this allegation was presented, the court could not determine whether the Code § 727(a)(4)(C) claim arose out of the same conduct or transaction constituting the basis for the original complaint.

1976 Ford automobile. Debtor insists that he failed to schedule the 1976 Ford among his assets because he mistakenly believed his wife, who routinely drove the car, owned it. According to the debtor, only after the postpetition insured loss did he learn, or remember, that the vehicle was titled solely in his name. Further, debtor denies any intent to defraud his creditors by not completely disclosing the facts in his December 1982 monthly report.

Though reported as income in some of the monthly operating statements, the debtor also failed to list in his schedule of assets: (1) rights to oil royalties from Ashland Oil Company and Oil Purchasing, Inc., and (2) rights to periodic payments from Charles Payne and Michael O'Dette pursuant to real estate contracts. The omission in his schedules of these rights is not cured by disclosure in the monthly operating statements because income attributable to oil royalties and the Payne and O'Dette contracts is understated. The value of these rights to payment is not established in the record.

Further, the debtor did not disclose $10,-012.12 in prepetition payments made during the "insider" preference period to Catherine Morgan, his wife, by Products Serving People, Inc., a corporation through which the debtor conducted business.[4] The debtor asserts these payments, in the form of corporate checks payable to his wife and signed by him, were made in the ordinary course of business. Specifically, he asserts the payments represent funds advanced to Catherine Morgan to purchase inventory and to compensate her for bookkeeping services. To substantiate the contention inventory was purchased with funds received from Products Serving People, Inc., the debtor proffered cancelled checks, totaling $4,894.13, issued by his wife against their joint personal account and payable to various vendors. According to the statement of financial affairs in her own bankruptcy case (Case No. 3-84-00255), com-

menced on February 21, 1984, Catherine Morgan received only $1,903.95 as income in 1982 from Products Serving People, Inc. The $3,214.04 difference between the amount paid to Catherine Morgan and the sum of inventory purchases and her wages is unexplained.

A prepetition transfer to the Church of God in Whiteville, North Carolina, of thirty cases of toothpaste, valued at $1,620.00 by the transferee, is also not reported in the debtor's statement of financial affairs. Asserting this was a charitable donation, debtor insists the omission was not an intentional attempt to hinder, delay or defraud his creditors. He testified he had purchased the toothpaste in the autumn of 1980 and that he had unsuccessfully attempted to sell it on several occasions.

Plaintiff also introduced four checks, totaling $55.00, written against the account of Checkerboard, Ltd. Each check is payable to and signed by the debtor, who did not report Checkerboard, Ltd. among his trade names. One check is dated November 5, 1982, debtor's bankruptcy filing date; the remaining checks are dated either November 9 or November 10, 1982. At least two other trade names, Morgan Leasing Company, Ltd. and Rainbow's End, were also not reported in debtor's statement of financial affairs. Debtor seeks to explain these omissions by asserting that: (1) Checkerboard, Ltd. was the same company as Regal Oil Corporation, a business name disclosed in the statement of financial affairs; (2) Morgan Leasing Company was engaged in business with Comprehensive Accounting Services, a reported business name of the debtor; and (3) no business was carried on under the trade name Rainbow's End, which is merely a name for an unfulfilled concept.

### Chapter 11 Monthly Operating Statements

From November 5, 1982, until November 7, 1983, debtor served as a debtor in pos-

---

**4.** See Amended Statement of Financial Affairs for Debtor Engaged in Business, filed December 10, 1982.

session. Plaintiff has adduced proof establishing numerous errors or falsities in the debtor's monthly reports. Joe Irvine, a certified public accountant, reviewed the debtor's records and reconstructed monthly income and expense reports for the period between November 1982 through October 1983. Based on his reconstruction, Irvine testified that the debtor received income totaling $24,822.32 during the twelve-month period. However, the debtor's reports reflect aggregate income during the same period of only $19,767.54. According to Irvine's testimony, the debtor understated his income by the amount of $5,054.78 while operating as a debtor in possession. The accuracy of Irvine's reconstruction is disputed by the debtor.

The monthly income reconstruction reports compiled by Irvine distinguish income documented or reported but not deposited in a bank account from income deposited in the joint account of the debtor and his wife.[5] For example, Irvine's December 1982 reconstruction, reflecting total income of $3,109.14 for the month, shows income of $2,692.11 not deposited in a bank account and deposited income of $417.03, consisting of these deposits:

| Date | Source of Deposit | Amount |
|---|---|---|
| 12/15/82 | Unknown | $220.00 |
| 12/27/82 | Ashland Oil royalty | $ 97.03 |
| 12/27/82 | Cash | $100.00 |

According to Irvine, the debtor understated his income for December 1982, by the amount of $319.00, an amount suspiciously close to the sum of $220.00 plus $100.00. Yet, even though the source of the $220.00 deposit is unknown, Irvine testified that it is not traceable from the $2,692.11 in in-

come reportedly not deposited in debtor's bank account. However, it is evident that the $100.00 cash deposit might be twice-counted as income.

Irvine's December 1982 monthly reconstruction is not atypical. Several reports reflect cash deposits or deposits from an unknown source. Reviewing Irvine's reports in a manner most favorable to the debtor—by treating cash deposits and deposits from unidentified sources as a duplication of monthly income to the extent their sum equals income reportedly not deposited—the court finds that the debtor still understated his income by $2,483.75 in his chapter 11 monthly operating statements.[6]

■ The debtor failed to report $707.19 in royalties received from Oil Purchasing, Inc. between January and May 1983. Royalties totaling $220.31 received from Oil Purchasing in June and September 1983 were falsely reported as income attributable to royalties from Ashland Oil. Plaintiff asserts the debtor sought to disguise the source of payment of these royalties in an attempt to hinder, delay, or defraud creditors. Although debtor concedes he failed to properly report royalty income, he testified that he reported all oil royalties which he thought were property of the estate. His attorney represents the failure to report royalties from Oil Purchasing results from debtor's mistaken understanding of the Bankruptcy Code. However, there is no representation that the debtor's misunderstanding is attributable to advice of counsel.[7]

---

5. According to the statement of financial affairs filed in her separate bankruptcy case, Catherine Morgan was employed between February and September 1982, by Products Serving People, Inc. She reportedly received income totaling $1,903.95 in 1982 and zero income in 1983. Hence, none of the funds deposited in the joint account represent income of Catherine Morgan.

6. This calculation is based on the summation of the following amounts:

| Month | Income Underreported |
|---|---|
| Nov. 1982 | $ 49.00 |
| Jan. 1983 | $290.50 |
| Feb. 1983 | $927.84* |
| Mar. 1983 | $183.58 |
| May 1983 | $175.74 |
| Aug. 1983 | $203.13 |
| Sept. 1983 | $394.00 |
| Oct. 1983 | $259.96 |

* This figure does not include any portion of the $1,260.00 Nationwide insurance payment to Catherine Morgan.

7. Unless it is patently clear that property should be scheduled, reliance upon the advice of coun-

Postpetition bank charges totaling $1,287.39, attributable largely, if not exclusively, to returned check charges, were incurred by the debtor while acting as debtor in possession. Although bank charges totaling $946.00 were incurred between November 1982 and June 1983, the debtor only reported bank expenses totaling $260.37.[8] Unpaid postpetition bank charges date from December 1982, but the debtor did not report such charges until July 1983. Even then the debtor understated the unpaid charges by the amount of $437.18. The final difference between the bank charges incurred ($1,287.39) and those reported by the debtor ($833.32)[9] is $454.07.

Irvine further testified that the debtor overstated his total expenses by the amount of $2,233.57. Although he questions the accuracy of Irvine's reconstruction, the debtor cannot account for the discrepancy between reported expenses ($19,913.94) and those documented by his records ($17,680.37). However, Catherine Morgan testified, without specificity, that she failed to obtain receipts for some expenditures.

### Postconversion Income

Subsequent to November 7, 1983, when an order converting his case to chapter 7 was entered, the debtor continued to receive periodic payments from Ashland Oil Company, Oil Purchasing, Inc., and Charles Payne. On May 10, 1984, Richard Stair, Jr., the trustee, made written demand upon the debtor for the immediate turnover of postconversion payments totaling $1,884.04. In his demand letter the trustee noted that Catherine Morgan, or her trustee in bankruptcy, might claim some interest in a portion of the payments. The

trustee recommended that the entire $1,884.04 be immediately turned over to him and a claim filed representing any interest asserted by or on behalf of Catherine Morgan. The funds were not turned over to the debtor's trustee until July 23, 1984, the first day of trial of plaintiff's objection to discharge. The delay in delivery of these funds to debtor's trustee is not explained.

## II

It is well-settled that the statutory right to discharge in bankruptcy is construed liberally in favor of the debtor and strictly against an objecting creditor. *In re Leichter*, 197 F.2d 955, 959 (3rd Cir. 1952), *cert. denied*, 344 U.S. 914, 73 S.Ct. 336, 97 L.Ed. 705 (1953). The plaintiff has the burden of proof at the trial of his objection to discharge. Bankr. Rule 4005, 11 U.S.C.A. Although the burden of going forward with evidence may shift after plaintiff establishes a prima facie case, *First Texas Savings Ass'n, Inc. v. Reed*, 700 F.2d 986, 992 (5th Cir.1983), the ultimate burden of persuasion remains upon the plaintiff. *First Federated Life Ins. Co. v. Martin*, 698 F.2d 883, 887 (7th Cir. 1983).

Plaintiff's proof fails to satisfy this burden insofar as its objection under Code § 727(a)(3). The debtor's books and records sufficiently reflect his financial condition and business transactions.[10] Indeed, plaintiff has utilized the debtor's own records to focalize some of its objections to discharge. The proof adduced by plaintiff also does not sustain its Code § 727(a)(5) objection. Plaintiff did introduce a personal financial statement of the debtor reflect-

---

sel to whom all relevant facts are disclosed generally negates any inference of fraud where assets have been omitted. See *In re Mascolo*, 505 F.2d 274, 277 (1st Cir.1974).

**8.** Debtor testified that he protested some of the bank charges. There is no evidence, however, that these charges were either cancelled or reduced.

**9.** This is the sum of the postpetition bank charges paid by the debtor ($375.37) and the amount he reported as unpaid ($457.95).

**10.** Although creditors must be able to ascertain a debtor's past and present financial condition or business transactions with reasonable accuracy, perfection in record-keeping is not required. *Kaye v. Hirsch*, 14 B.R. 59, 62 (Bankr.S.D.Fla. 1981).

ing a net worth of $319,350.00 as of July 1, 1982, less than five months previous to the filing of bankruptcy schedules reflecting insolvency.[11] However, the financial statement is not signed, and there is no other evidence before the court to permit a finding that the debtor has experienced an unexplained loss of assets. The remaining objections present close questions involving the debtor's intent.

### Intent to Hinder, Delay or Defraud

■■■■ To sustain an objection under Code § 727(a)(2) a plaintiff must prove:

(1) a transfer, removal, destruction, mutilation, or concealment

(2) involving property of—

(a) the debtor and occurring within one year of the petition filing date; or

(b) property of the estate and occurring postpetition

(3) whereby the debtor intended to hinder, delay, or defraud a creditor.

Significantly, it is not necessary to prove fraud; because the statutory language is disjunctive, an intent to hinder or delay suffices. *In re Perlmutter,* 256 F. 862, 869 (D.N.J.1919), *aff'd sub nom. Perlmutter v. Hudspeth,* 264 F. 957 (3rd Cir.1920). Under Code § 727(a)(2) actual intent to hinder, delay, or defraud is necessary; a constructive fraudulent transfer is insufficient to support denial of discharge. *Bank of Pennsylvania v. Adlman,* 541 F.2d 999, 1003 (2d Cir.1976); *In re Fragetti,* 24 B.R. 392, 396 (Bankr.S.D.N.Y.1982). Although the intent must be actual it may be proved through circumstantial evidence. *Farmers Coop. Ass'n v. Strunk,* 671 F.2d 391, 395 (10th Cir.1982); *Montgomery Ward & Co., Inc. v. Gordley,* 38 B.R. 630, 632 (Bankr.S. D.Ohio 1984).

■■■■ Plaintiff has established a prima facie case under Code § 727(a)(2). Proof of

material concealment[12] and transfer of property of both the debtor and the estate has been adduced. Further, intent to hinder or delay is inferred due to omission of valuable assets in the debtor's schedules, false answers in his statement of financial affairs,[13] and the prepetition gratuitous transfer of toothpaste. *See* 4 *Collier on Bankruptcy* ¶ 727.02[3], 727–13 (15th ed. 1984). Hence, it was incumbent upon the debtor to proffer evidence explaining both the errors and omissions in his schedules and statement of financial affairs and his gratuitous transfer of toothpaste. *Reed,* 700 F.2d at 992; *Matter of Ramos,* 8 B.R. 490, 494 (Bankr.W.D.Wis.1981).

Even though the debtor's reason for failing to schedule the 1976 Ford automobile is credible, no explanation has been proffered for his omission of rights to periodic payments from Ashland Oil, Oil Purchasing, Charles Payne, and Michael O'Dette. Omission of these payment rights is particularly damaging. The inference of intent to conceal assets is only partially negated by income disclosures in the monthly operating reports, because the debtor failed to report all of the payments received from Oil Purchasing. Since he reported similar income payments from Ashland Oil, beginning with his first monthly report, debtor's testimony that he did not believe he had to report royalties from Oil Purchasing is illogical. Furthermore, when he did begin to include oil royalties from Oil Purchasing in his monthly income reports, he attributed the payments to Ashland Oil. This misrepresentation certainly appears calculated to conceal the fact that postpetition payments had been received from Oil Purchasing.

■■■■ Question 14 of the debtor's statement of financial affairs recites:

---

11. According to the debtor's schedules, filed on November 19, 1982, his liabilities exceeded his assets by $71,195.70.

12. "Concealment" has a broader meaning than secreting or hiding away assets; it also means to prevent discovery of or to withhold knowledge.

*United States v. Schireson,* 116 F.2d 881, 884 (3rd Cir.1940).

13. See *In re Butler,* 38 B.R. 884 (Bankr.D.Kan. 1984) (discharge denied where debtors gave false answer to question concerning transfers within one year preceding bankruptcy).

*Transfers of property.*

a. Have you made any gifts, other than ordinary and usual presents to family members and charitable donation, during the year immediately preceding the filing of the original petition herein?

Although he answered "None," the debtor admits he gratuitously transferred thirty cases of toothpaste on or about October 22, 1982, less than thirty days prior to filing his statement of financial affairs. Clearly this transfer is outside the scope of "ordinary and usual" donations. Even though the debtor contends the toothpaste had little or no value,[14] creditors are entitled to truthful responses to enable them to investigate for themselves.

 Because the omission of a trade name ordinarily harms, rather than assists a debtor, it is unlikely such omissions are made with fraudulent intent. *McCue v. Galbraith*, 17 B.R. 302, 304 (Bankr.M.D. Fla.1982). Debtor, however, failed to disclose both the trade name Checkerboard, Ltd. and a bank checking account under that name. The account must have been a prepetition account because check no. 101, a "personalized" check reflecting the printed trade name, was issued on the petition date.[15] Although the sum of the four checks drawn against the account in favor of, and signed by, the debtor is only $55.00, deliberate omissions, though minor, may evidence wrongful intent in connection with more significant omissions. *Kaye v. Hirsch*, 14 B.R. 59, 61 (Bankr.S.D.Fla. 1981). Further, the court concurs in the view expressed in a case involving a concealment of only $15.22:

True, the sum was small; but it was ... property belonging to the estate of the bankrupt. It was concealed from the trustee. The Bankruptcy Act is not aimed particularly at *large* concealments of property, but at *all* concealments of property.... [W]hen knowingly and willfully concealed from the trustee, and drawn out and used by the bankrupt for his own personal use, whether the sum be large or small, we have a concealment of property with intent to defraud his creditors.... (Emphasis in original.)

*In re Smith*, 232 F. 248, 254 (N.D.N.Y. 1916).

More than carelessness is involved in this case. Reporting income is an elementary task, particularly for an accountant. Yet, at a minimum the debtor understated his income over a twelve-month period (between November 1982 and October 1983) by the amount of $2,483.75, equating to nearly ten percent of his income during the period.

 Additionally, the delayed transfer to a bankruptcy trustee of funds which are property of the estate is not dispositive of the issue whether a concealment has occurred. *Farmers Coop. Ass'n v. Strunk*, 671 F.2d 391, 395 (10th Cir.1982). Although written demand was made by the trustee, turnover of periodic payments received by the debtor after October 1983, was delayed more than two months, until the very day of trial of plaintiff's objection to discharge.

 The proof establishes concealment of both property of the debtor within one year preceding the filing date and property of the estate, with an intent to hinder or delay both creditors and the trustee.[16]

---

14. See *Isabel v. Kelsey*, 9 B.R. 154 (Bankr.W.D. Ky.1981) (transfer of valueless property does not bar discharge).

15. The court assumes arguendo that Checkerboard, Ltd. and Regal Oil Corporation are the same company, as asserted by the debtor. Although the debtor represented in his statement of financial affairs that all accounts for Regal Oil Corporation require the signature of Herbert Surpling, none of the four checks against the Checkerboard, Ltd. account, payable to the debtor, are countersigned by Mr. Surpling. The court consequently deduces that the account

was not disclosed in the debtor's statement of financial affairs.

16. The court has reached this conclusion without considering the propriety of the prepetition payments to Catherine Morgan by Products Serving People, Inc. in excess of the sum of compensation for her services and reimbursement for corporate inventory purchases. Although the debtor amended his statement of financial affairs to reflect that he did business under the name Products Serving People, Inc., the identity of the owners of the corporation is not established in the record. It is not appropri-

 

*False Oath or Account*

 A false statement or omission in a debtor's schedules or statement of financial affairs may be a false oath barring discharge. However, the false statement or omission must be knowingly and fraudulently made in connection with the bankruptcy case. Code § 727(a)(4). Discharge will not be denied where an honest mistake has been made. Prejudice to creditors, however, is not a necessary element in denying a discharge under Code § 727(a)(4)(A). *See In re Robinson,* 506 F.2d 1184, 1188 (2d Cir.1974).

 The following statement is recited immediately above the debtor's signature in each of the first five operating reports: "The foregoing is a true and accurate statement of all income received and expenses paid for the period stated...." Without exception, the statement is false in each report due to either an understatement of income or an overstatement of expenses. Further, in the subsequent monthly reports the debtor certified under penalty of perjury "that the information contained ... [in the report] is truthful, complete and accurate to the best of my knowledge." Yet, the debtor continued to understate income and misreport expenses. Further, he inexcusably failed to disclose postpetition bank charges for returned checks.

The debtor has made a false oath and given a false account in connection with his schedules, statement of financial affairs, and monthly reports. The cumulative effect of the errors and omissions in his schedules, statement of financial affairs, and monthly reports amounts to a reckless indifference to the truth, equating to fraud sufficient to deny discharge. *Diorio v. Kreisler-Borg Constr. Co.,* 407 F.2d 1330 (2d Cir.1969); *Guardian Indus. Products, Inc. v. Diodati,* 9 B.R. 804, 808 (Bankr.D. Mass.1981).

In conclusion, plaintiff has sustained its burden of proof. Denial of discharge in this case is required in accordance with Code §§ 727(a)(2) and (a)(4)(A). This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.

ate to presume that the property of Products Serving People, Inc., belongs exclusively to the debtor or his estate.