In re Gary L. LEVINE and Lora L. Levine, Debtors.

BARNETT BANK OF SOUTH FLORIDA, N.A., Plaintiff,

v.

Gary L. LEVINE and Lora L. Levine, Defendants.

Marika TOLZ, Trustee, Plaintiff,

v.

Gary L. LEVINE and Lora L. Levine, Defendants.

TAGSOLD CHARTER, INC., Plaintiff,

v.

Gary L. LEVINE and Lora L. Levine, Defendants.

Bankruptcy No. 88–04530–BKC–SMW. Adv. Nos. 89–0417–BKC–SMW–A, 89–0416–BKC–SMW–A and 89–0289–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

Nov. 27, 1989.

Reggie David Sanger, Ft. Lauderdale, Fla., for Trustee.

Jonathan A. Heller, Heller & Chames, P.A., Miami, Fla., for Barnett Bank.

Michael B. Small, Palm Beach, Fla., for Tagsold Charter.

Charles D. Barnard, Ft. Lauderdale, Fla., Frederic J. DiSpigna, Boca Raton, Fla., for debtors.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having come on to be heard on October 24 and November 6, 1989, upon the consolidated trial upon the Plaintiff, Marika Tolz, Trustee, Tagsold Charter, Inc., and Barnett Bank of South Florida N.A.'s complaint objecting to the discharge of the Defendants, Gary L. Levine and Lora L. Levine, his wife, filed herein, and the Court, having heard the testimony and examined the evidence presented, having observed the candor and demeanor of the witnesses, having considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

The Plaintiffs have filed multi-count complaints which objected to the discharges of the Debtor, Gary L. Levine and Lora Levine, his wife pursuant to Section 727 of the Bankruptcy Code. The complaint allege the Debtors failed to keep records of their financial transactions upon which the debtor's financial condition might be ascertained, made false oaths in this proceeding, failed to explain the loss of assets, made transfers within one year with the intent to delay hinder or defraud creditors. The Plaintiffs, Tagsold Charter, Inc. also objected to the dischargeability of its individual debt pursuant to 523 of the Bankruptcy Code. For the reasons set forth below the Court finds that the Debtors' discharge should be denied pursuant to each of the first four grounds asserted by the Plaintiffs and does not reach the questions raised by the dischargeability of the debt claimed by Tagsold Charter, Inc.

### Background

In 1980 the Debtor, Gary Levine, started having financial problems. Tagsold Charter, Inc. recovered a judgment of $235,-000.00 against Mr. Levine in the United States District Court in Michigan. The judgment was later transferred to the Southern District of Florida and Tagsold has attempted unsuccessfully to collect on its judgment since that time. In June 1985 Barnett Bank of South Florida N.A. recovered a judgment against Gary Levine for a sum in excess of $50,000.00 and started levying upon his assets in the spring of 1987. Barnett Bank recovered another judgment in April 1987 this time against both Debtors for attorney's fees and costs which the Debtors unsuccessfully appealed. Since 1987 the Debtors have been involved in substantial business transactions which exceeded the sum of $1,400,000.00.

On November 22, 1988 the Debtors filed a voluntary petition under chapter 11 of the

Bankruptcy Code. The bankruptcy proceeding was converted by this Court to a chapter 7 liquidation proceeding on the 29th of March, 1989. It is the Debtors conduct and business transaction and the records maintained with this background from which the challenges to their discharge is made.

## FAILURE TO KEEP AND PRESERVE BOOKS AND RECORDS

■ The single common thread of this litigation is that through the simple expedient of not keeping proper records and not remembering transactions, the Debtors have frustrated the creditors and Trustee's efforts to discover and evaluate assets for the benefit of creditors.

The Court shall grant a discharge unless a debtor fails to keep or preserve any recorded information, including, books, documents, records which a debtor's financial condition or business transactions might be ascertained. 11 U.S.C. 727(a)(3). In conjunction with this statute the Debtors are under a statutory mandate to:

Cooperate with the Trustee as necessary to enable the Trustee to preform the Trustee's duties ... (and to) surrender to the Trustee ... any recorded information, including books, documents, records, and paper relating to the property of the estate ... Section 521(3) and (4).

The Trustee in April 1989 made a substantial request for financial records of the Debtors and their business enterprises since 1987 to date. The Trustee's request was reasonable and not questioned in view of the substantial business transactions entered into by the Debtors either individually or through their corporations. The Debtors delayed in producing all of the records; in fact, up until the beginning of the second day of the trial in this cause documents were being produced.

The Debtors were involved in three major transactions in 1987 which resulted in the sale of their assets which generated gross receipts of $1,494,000.00. It is the dispositions of these monies through their various corporate and individual accounts and the purchase sales and loan transac-

tions that followed which the Plaintiffs questioned. These include but are not limited to the following significant transactions:

1. Bulk sale of N.C.A. Sales & Trading Ltd. Inc. for $494,000.00 in March 1987.

2. Sale of 50% of the stock in Hurricane Harbor Yacht Center and Boatyard Inc. for $650,000.00 in March 1987.

3. Sale of 50% of the stock of Hurricane Harbor Yacht Center and Boatyard Inc. for $350,000.00 in July 1987.

4. Sale of the Glenda Rae (54 foot Bertram) valued at $375,000.00 in Debtors' tax return in April 1988.

5. Purchase and sale of 30 foot Scarab in 1988 valued at $27,000.00.

6. Purchase and sale of two Cadillacs valued in excess of $22,000.00 in 1988.

7. Disposition of loan proceeds of Regent Bank three loans totaling $98,000.00 in March 1988.

8. Disposition of loan proceeds of Seminole Bank in the amount of $100,000.00 in 1988.

9. Purchase and sale of a 39 foot Cigarette Boat with a value between $50,-000.00 to $59,000.00 in 1988.

The Debtors argue that it is the Trustee who must play detective and ferret out the documents from third parties. In large part that was done in this case. But the Debtors are under an affirmative duty to assist the Trustee under Sec. 523(3) and (4). Here, even if the Trustee were required to go to third parties to reconstruct financial records, which she is not, the material omissions on the schedules which include the failure to list all the bank accounts in which the Debtors were signatories upon, made it impossible for the Trustee to know what banks and what accounts existed. The Debtors admit that they are not record keeping people and their records clearly establish this fact.

Notwithstanding, the statutory requirements under Florida Statute 607.157 require that the Debtors in their corporate capacity to maintain complete books and records of accounts and minutes of corpo-

rate activity none were maintained in any of their corporations. There are no complete records to substantiate or corroborate the business transactions, especially the monies allegedly paid to persons known as Richard Martin, Larry Daniell and Mark Smith which sums total $285,000.00. Furthermore, there were no cancelled checks or receipts which would establish $230,-000.00 being paid to Richard Martin in 1987.

This record is replete with specific instances of substantial business transaction which have no documentation. For example, there are no tax returns, general ledgers, disbursement journals, profit and loss statements, records evidencing loans, purchases or sale transactions nor complete bank statements, deposit slips, and cancelled checks from any of the business enterprises of the Debtors. Furthermore, the limited documents produced evidence a intermingling of funds through different personal and corporate accounts of the Debtors, as if they represent one common pot of money. Consequently, because of failure to produce complete books and records the Trustee and creditors are unable to trace the disposition of the $1,494,-000.00.

■ The Debtors admitted that they treated the funds as "all our money." The limited records and the Debtors' vague, general, illogical and incongruous explanations which at times are inconsistent with prior statements is not enough to satisfy the requirements of 11 U.S.C. 727(a)(3). *In re Hirsch,* 14 B.R. 59 (Bankruptcy S.D. FL 1981). The Debtors as a matter of law are responsible for keeping accurate business records and the duty is not delegable. *In re Fineberg,* 36 F.2d 392 (D.N.Y.1929); *In re Escobar,* 53 B.R. 382, 13 B.C.D. 701 (Bankruptcy S.D.Fla.1985); *In re Sharpe,* 16 B.R. 226 (Bankruptcy S.D.Fla.1981). Here the debtors admitted failure to maintain records and the limited documents produced and turned over to the Trustee precludes the Trustee from making a meaningful explanation of the Debtors' financial condition and business transactions since 1987.

## FALSE OATHS

■ Under 11 U.S.C. 727(a)(4) debtors who knowingly and fraudulently make false oaths in connection with a case are not entitled to a discharge. *In re George,* 9 B.R. 9 (Bankruptcy S.D.Fla.1981); *In re McDonald,* 16 B.R. 621 (Bankruptcy Ct. S.D.Fla.1981); *In re Irving,* 27 B.R. 943, 945 (Bankruptcy Ct.E.D.N.Y.1983); *In re Cook,* 40 B.R. 903 (Bankruptcy N.D. Iowa 1984). In this case in viewing all of the sworn statements made by the debtors it is clear the debtors have made numerous false oaths regarding numerous material financial transactions.

In response to the statement of affairs question 14(b) the Debtors failed to disclose the sale of a 39 foot Cigarette boat which was in actuality their boat purchased with funds from the sale of stock owned by them and then sold in 1988. The 39 foot Cigarette boat was held by the Debtors with an open title that was thereafter sold after the Debtors had executed their bankruptcy schedules on October 31, 1988 and 6 days before the petition was filed. This sale generated the sum of $50,000.00. Three checks were made payable to Gary Levine and others which sums were utilized allegedly for repayment of undocumented and unsubstantiated loans and one check which allegedly was for the purchase of an ostrich for $15,000.00.

If one were to believe the Debtors' version that $35,000.00 of these monies were used to repay loans this should have been disclosed on the statement of affairs in response to question 13(a). The Debtors failed to disclose these repayments of loans.

The Debtor Gary Levine in his 2004 exam given in July 7, 1989 swore when first questioned about the transaction that he had received $20,000.00 as a broker to the sale of the 39 foot Cigarette boat. The Debtor further stated he didn't know what happened to the $20,000.00. It was not until after Plaintiffs were able to serve the broker in the transaction that it was dis-

closed that the Debtor actually received $50,000.00 in three joint checks. Also, no where is it reflected in the statement of affairs or schedules as to the ownership of an ostrich which was purchased with $15,-000.00 of the funds. The Debtors have no records nor do they know the whereabouts of the individuals as to these transactions.

The Debtors failed to disclose all of the various corporate accounts as they were required in response to question 7 of the statement of affairs on which they were signatories within two years of bankruptcy which included but were not limited to:

Hurricane Harbor Yacht Center and Boatyard, Inc.

Hurricane Harbor Yacht Sales & Charter Inc.

Flyin, Floatin, Rockin & Rollin Inc.

North American Ostrich Breeders, Inc.

N.C.A Sales and Trading Ltd. Inc. d/b/a Coastal Seawall.

Alligator Jacks On the River, Inc.

The Debtors, also, failed to disclose the two $100,000.00 certificate of deposits which was required to be disclosed in response to question 7 of the statement of affairs.

The Debtors falsely represented in response to question 5 and 14(b) of the statement of affairs that they received $300,-000.00 from the sale of the stock of Hurricane Harbor Yacht Center & Boatyard, Inc. in February 1987 when in fact the amount was $650,000.00, and the second sale in July of 1987 for $350,000.00 was not disclosed.

The Debtors represent that they are in business as livestock breeders in the ostrich breeding business, however, they disclaim that they have any ownership interest even though they represented that they have an option to purchase certain stock in the corporation as a result of a transfer of a 34 foot motor coach home and an employment agreement. Moreover, the transfer of the motor coach was never made and there exists no written agreement as to a right to purchase stock, nor has there ever been any stock issued for any property or services rendered to the corporation to which Debtors have devoted over 2 years time.

■■■ Knowingly fraudulent omissions from a sworn statement of affairs or schedules may constitute a false oath. *Farmers Co–Operative Association v. Strunk*, 671 F.2d 391, 395 (10th Cir.1982); *In re Chalik*, 748 F.2d 616, 12 B.C.D. 855 (11th Cir.1984) and *In re Raiford*, 695 F.2d 521, 522 (11th Cir.1983). Deliberate omissions of material matters by the debtors may also result in the denial of discharge. *Id.* It makes no difference that a debtor did not intend to injure his creditors when the false statement or omission was made. Creditors and the trustee are entitled to judge for themselves what will benefit and what will prejudice them.

## FAILURE TO EXPLAIN SATISFACTORILY ANY LOSS OF ASSETS OR DEFICIENCY OF ASSETS TO MEET DEBTORS' LIABILITIES

■■■ The Debtors' lack of adequate records and documents regarding their various business transactions in 1987 and 1988 leaves the only explanation for the loss of these assets to rest entirely on vague, indefinite, illogical, incongruous, explanations based upon verbal statements of the debtors. Other courts have determined in similar situations involving far lesser sums than here that vague, indefinite explanations uncorroborated by documentation, are unsatisfactory. See *In re Reed*, 700 F.2d 986 (5th Cir.1983) (debtors' explanation that $19,586.00 was consumed by business and household expenses and gambling debts was unsatisfactory). *Baum v. Earl Milikin Inc*, 359 F.2d 811, 814 (7th Cir.1966) (satisfactory explanation must consist of more than a vague indefinite and uncorroborated hodgepodge of financial transactions). See also 4 *Collier on Bankruptcy* paragraph 727.08 (15th Fd.1984); *In re Chalik*, 748 F.2d 616, 12 B.C.D. 855 (11th Cir.1984). (Debtor failed to satisfactorily explain loan of $130,000.00 and disposition

of proceeds); *In re Hirsch*, 14 B.R. 59 (Bankruptcy Ct.S.D.Fla.1981).

Here the Debtors' explanations do not adequately explain the loss of assets and, in fact, the explanation along with the new business enterprises, North American Ostrich Breeder, Inc. and Alligator Jacks on the River, Inc. (which entity was not disclosed in the debtors' schedules or any amendment to them after the conversion of this case) raises more questions than answers as to the extent of the Debtors' involvement in the enterprises as owners and/or creditors of those entities.

## TRANSFERS WITHIN ONE YEAR WITH THE INTENT TO DELAY HINDER OR DEFRAUD

■ The Debtor, Gary Levine, has had creditors seeking to collect on judgments against him since 1980. Tagsold Charter Inc. recovered a judgment against him in April 29, 1980 for $235,000.00 in the United States District Court in Michigan. This judgment was transferred to the Southern District of Florida in August 20, 1980. Tagsold Charter Inc. thereafter conducted a deposition in aid of execution in October 27, 1980 and recorded its judgment in the public records of Dade County, Florida in November, 1980. Thereafter, various orders of contempt have been entered against the Debtor in Tagsold's collection efforts.

Barnett Bank of South Florida N.A. (hereinafter referred to as Barnett) recovered a judgment against Gary Levine in June 1985 in excess of $50,000.00. Barnett attached Gary Levine's stock interest in the company N.C.A. Sales & Trading, Inc. in February 1987. On April 1, 1987 Barnett recovered a judgment against both of the Debtors for attorneys fees and costs which the Debtors unsuccessfully appealed. In addition to these two major creditors the Debtors were involved in pending litigation with four other creditors whose suits are more particularly described in response to question 12(a) and (b) of their statement of affairs filed in this proceeding.

This background of creditor problems illustrates why Lora Levine became the standard bearer for all of the corporations which Gary Levine was involved with and controlled since 1987. Mr. Levine admits his wife made no decisions as to the various business transactions.

The creation of the numerous corporations and commingling of the Debtors personal funds under the various corporate bank accounts had the intended result to prevent disclosure to creditors. This would probably have continued had not Barnett been successful in the appeal of its judgment against both Debtors in November 1988. The recovery of a judgment against both Debtors put the various monies in Lora's name and corporations which she held stock at jeopardy. This left the Debtors with the only option of filing the voluntary petition under Chapter 11 in November 1988.

The following transfers made within one year of bankruptcy demonstrate the intent to delay, hinder and/or defraud the creditors of this estate:

1. Purchase and sale of a 39 foot Cigarette boat sold with an open title to prevent disclosure. The sale generated $50,000.00 to the Debtors. The source of the monies to purchase same was from Debtors' interest in Hurricane Harbor Yacht Center and Boatyard Inc.

2. Purchase and sale of 30 foot Scarab boat in 1988 with a value of $27,000.00

3. The disposition of the $250,000.00 from the sale of the Glenda Rae. The Debtors stated $200,000.00 was put in certificate of deposits under the name of corporations in 1988 and were later used as collateral for loans that were paid from the monies. The disposition of the $200,000.00 in loan proceeds have never been disclosed even though they were received by them 7 months before they filed for bankruptcy.

All of the foregoing, properties and monies were placed out of the Debtor's names

but not their control in various corporate names of Hurricane Harbor Yacht Sale and Charter Inc. and Flyin, Floatin, Rockin, and Rollin, Inc. clearly establishes the intent to put the properties and monies beyond the reach of the Debtors existing creditors.

The Debtor's conduct and the lack of documents establishing their ownership of North American Ostrich Breeders, Inc. likewise establish the Debtors intent to delay, hinder the creditors from collecting against the Debtors interest in that corporation. The Debtors retained possessions and benefit of the properties and monies through their corporation.

Where such fraudulent conduct has been demonstrated debtors have been denied a discharge. *In re Marcus,* 45 B.R. 338 (S.D. N.Y.1984). In each of the transactions the Debtors exemplified the classic badges of fraud outlined in *In re May,* 12 B.R. 618, 627 (N.D.Fla.1980); *In re Cadarette,* 601 F.2d 648, 651 (2nd Cir.1979); *Sampsell v. Imperial Paper & Colar Corp.,* 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941) as follows:

(a) There was no consideration for the monies and properties being placed into the various corporate entities.

(b) The transfers were to entities, controlled by family friends or close associates.

(c) The Debtors retained possession, benefit, or use of the money and property in question.

(d) The transactions and transfers were done after the onset of collection actions by creditors and the effect of putting these items beyond disclosure and levy.

The Debtors' conduct in creating these dummy corporations and placing their substantial monies and properties in them, clearly presents a scheme to delay, hinder and defraud their creditors.

## CONCLUSION

For the foregoing reasons, this Court will deny the Debtors a discharge. In accordance with the Bankruptcy Rules, a sep-

arate judgment has been entered of even date herewith.