In re Anthony Sestilio CASERTA, Debtor.

Gui L.P. GOVAERT, Trustee, Gerald J. Tobin and Caron Balkany, Plaintiffs,

v.

SOUTHERN NATIONAL BANK OF NORTH CAROLINA and Anthony S. Caserta, debtor, Defendants.

Bankruptcy No. 91–11072–BKC–AJC. Adv. No. 94–0383–AJC–A.

United States Bankruptcy Court, S.D. Florida.

May 11, 1995.

---

Myrna D. Bricker, Semet, Lickstein, Morgenstern, Berger, Friend, Brooke & Gordon, P.A., Coral Gables, FL, for plaintiff Gerald J. Tobin.

Irving M. Wolff, Irving M. Wolff, P.A., Miami, FL, for debtor Anthony S. Caserta.

Richard Siegmeister, Miami, FL, for Trustee Gui L.P. Govaert.

Gui L.P. Govaert, Trustee, Miami, FL.

*MEMORANDUM DECISION AND OR-*
*DER GRANTING TOBIN'S MOTION*
*FOR SUMMARY JUDGMENT, DENY-*
*ING DEBTOR'S CROSS MOTION*
*FOR SUMMARY JUDGMENT AND*
*DENYING DISCHARGE OF DEBTOR*

A. JAY CRISTOL, Chief Judge.

THIS CAUSE came on to be heard on May 4, 1995 upon Plaintiff Gerald J. Tobin's Motion For Summary Judgment and Debtor's Cross Motion For Summary Judgment. The Court having reviewed the motions and having examined the pleadings, memoranda, depositions and answers to interrogatories and the Court being otherwise advised in the premises, hereby determines as follows.

### STANDARD OF REVIEW

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under governing law." *Id.* at 247, 106 S.Ct. at 2510.

The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). There is no genuine issue for trial if the record, taken as a whole, does not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co.*

*Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted". *Anderson,* 477 U.S. at 249–250, 106 S.Ct. at 2511 (citations omitted).

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion, identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any", which it believes demonstrates the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Once the motion is supported by a *prima face* showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings; rather, its response must show that there is a genuine issue for trial. *Anderson,* 477 U.S. at 247, 106 S.Ct. at 2510; *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. Debtor's Response and Cross Motion For Summary Judgment do not address the substantive issues of fact or law presented in Tobin's motion for summary judgment. Rather, Debtor contends that as a consequence and/or legal effect of prior proceedings, neither Tobin nor either of the other Plaintiffs has a right to prosecute actions to bar Debtor's discharge. The Court will address this argument in the body of its opinion.

In support of his motion for summary judgment, Tobin has submitted the depositions of Carroll Garland, loan officer, and Patricia Vines, loan processor, both of Southern National Bank, the depositions of Caron Balkany, of Debtor's son David T. Caserta and a deposition of Debtor dated January 6, 1995. In addition, Tobin has presented transcripts or portions thereof of Bankruptcy Rule 2004 examinations of Debtor taken on September 6, 1991 and on January 31, 1992; the Schedules and Statement of Financial Affairs of Debtor; and Debtor's Responses to Interrogatories. Tobin has attached to his motion a number of documentary exhibits to which he has referred, where applicable.

## BACKGROUND AND UNCONTESTED FACTS

Anthony S. Caserta, Debtor herein, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on March 14, 1991. Debtor is a real estate broker licensed in the State of Florida, who has invested in real estate and has put together real estate investment packages for himself and numerous other associates and investors in Florida and in North Carolina over the past 25 years or so.

Debtor owned at the time of his petition in bankruptcy a chalet located on 5 acres of land in Watauga County, North Carolina. Southern National Bank of North Carolina has held a first mortgage on the chalet property since November, 1988. In arranging loans for himself or for members of his immediate family, or in negotiating other banking transactions as a representative of his numerous investment groups in North Carolina, Debtor frequently conducted banking business with Southern National Bank. Carroll Garland was the loan officer who handled Debtor's account. At the time of Debtor's petition in bankruptcy, Debtor owed the Bank approximately $85,000.00 on the first mortgage encumbering the 5 acres and chalet property and an additional $90,000.00 on an unsecured Note dating back to September 10, 1990, a Note which consolidated and renewed two other outstanding unsecured obligations of Debtor. In addition, Debtor was liable on a personal guarantee in the amount of $80,000.00 in connection with loans to Tim- berlakes Resorts, Inc., one of Debtor's investment projects in North Carolina. [Exhibits 6, 7, and 8; Garland and Vines Depositions].

In August 21, 1991, a few months after the bankruptcy petition was filed, Debtor executed a Promissory Note in favor of Southern National Bank and Second Deed of Trust on the 5 acres and chalet property in the amount of $89,502.75, the balance outstanding on the September 10, 1990 unsecured note, thereby granting to the Bank a second mortgage on the property. [Garland deposition p. 49; Exhibit 9]. The Second Deed of Trust converted Debtor's pre-petition unsecured debt to secured debt and allowed the Bank to extend its mortgage lien to encumber the full value of 5 acres and chalet property. [Garland deposition, p. 60–62; Exhibits 14 and 15]. Neither Debtor nor the Bank sought Court approval of the transaction or advised the trustee or creditors of the post petition transaction.

In addition, Debtor and the Bank arranged and executed documents for the assignment to the Bank of a Promissory Note made by Ralph A. Federici, Jr. and Lourdes Federici in favor of Debtor in the principal amount of $18,750.00, secured by a Deed of Trust on approximately 4.5 acres of real property in North Carolina, in which Debtor claimed to hold an interest merely as trustee. The assignment of the Federici Deed of Trust dated February 4, 1992 was given by Debtor to the Bank as additional collateral to secure the Second Deed of Trust on the chalet property. [Garland deposition p. 49–50; Exhibit 10; Caserta deposition 1/06/95; p. 96–97]. Southern National Bank has received payments in the amount of $6,800.00, which the Bank has applied to reduce the second mortgage. [Garland deposition p. 50–51]. Neither the Court nor the trustee was informed of this transaction.

In April, 1992, Debtor negotiated a loan from Southern National Bank to his son David in the amount of $61,052.75, the entire proceeds of which were applied by the Bank to further reduce the unauthorized second mortgage. This Note was secured by an assignment of 30,000 shares of stock held in the name of Debtor's son in an entity known as NCV, Inc. a real estate development located in Linville, North Carolina. Debtor has repeatedly denied any interest in NCV, Inc., claiming that this property has always belonged exclusively to his son. [Garland deposition p. 63–65; Exhibits 11, 12]. Debtor did not inform the trustee or seek court authorization for any of these post petition transactions.

Unbeknownst to the trustee, Debtor rented the chalet property to tenants during these proceedings, collecting rent for approximately a year and a half in the amount of $700.00 per month. [Garland deposition p. 114; Caserta deposition 1/06/95 p. 108–109; Exhibit 15].

This adversary proceeding was commenced by Gui L.P. Govaert, Trustee, Caron Balkany and Gerald J. Tobin against Southern National Bank of North Carolina and Debtor, in which all three plaintiffs asserted claims against the Bank for willful violation of the automatic stay, equitable subordination and for damages on a number of theories. The five-count complaint included one count against Debtor for denial of discharge pursuant to 11 U.S.C. § 727(a)(2)(B), alleging post petition concealment of assets in connection with certain of Debtor's transactions with the Bank. The claims against the Bank have been resolved by a stipulation of settlement among all three plaintiffs and the Bank. The settlement has been approved by the Court and has resulted in the dismissal of the action against the Bank.

Prior to the commencement of this adversary proceeding, Tobin had pending an adversary proceeding against Debtor, asserting a claim for damages for fraud concerning some pre-petition dealings with Debtor in connection with the now defunct Bayshore Bank, a claim pursuant to 11 U.S.C. § 523(a)(2)(A) objecting to the dischargeability of the unliquidated fraud claim and a third claim pursuant to Section 727(a)(3) and/or (5). (Adv.Pro. No. 94-0075). Tobin has amended his Complaint in Adv.Pro. No. 94-0075 to add a Count under Section 727(a)(4)(A). All three of Tobin's Section 727 claims from both adversary proceedings have been consolidated for trial under the above-styled adversary case number. The § 523 claim is being held in abeyance pending the outcome of the adjudication of the Section 727 claims. Tobin brings his motion pursuant to Fed.R.Civ.P. 56(c) as to all three Counts under Section 727.

Tobin's causes of action against Debtor for denial of discharge allege essentially the following:

1. 11 U.S.C. § 727(a)(2)(B). Debtor participated in undisclosed transactions with Southern National Bank of North Carolina post petition with respect to property located in North Carolina to conceal assets with intent to hinder, delay or defraud creditors under 11 U.S.C. § 727(a)(2)(B). Specifically, Debtor (a) without authorization, granted a second Deed of Trust on a chalet located on 5 acres of real property owned by Debtor; (b) assigned to the Bank 30,000 shares of stock held in the name of his son in an entity known as NCV, Inc. in exchange for a loan to Debtor's son, the proceeds of which were used to reduce Debtor's second mortgage to the Bank; and (c) assigned to the Bank a Note and Deed of Trust from Ralph A. Federici, Jr. and Lourdes Federici in the amount of $18,750.00 ("Federici Deed of Trust") as additional collateral on the second mortgage and note. All acts were carried out without court authorization and constitute concealment of assets with intent to hinder delay or defraud creditors under 11 U.S.C. § 727(a)(2)(B).

2. 11 U.S.C. § 727(a)(4)(A). Debtor's testimony and/or statements made under oath with regard to his interest in NCV, Inc., with regard to his rights or interests in other items of property such as the Federici Deed of Trust receivable, and Debtor's material omissions on his bankruptcy Schedules concerning his assets and liabilities are false and constitute grounds for denial of discharge under 11 U.S.C. § 727(a)(4)(A); and

3. 11 U.S.C. § 727(a)(3) and (5). Debtor's failure to explain satisfactorily either in his Statement of Financial Affairs or Schedules or in testimony given in a number of examinations pursuant to Bankruptcy Rule 2004 or in depositions taken in connection with the case or in Response to Interrogatories, the loss or deficiency of assets to account for over seven million dollars of debt at the time of the bankruptcy petition are grounds for denial of discharge pursuant to 11 U.S.C. § 727(a)(5). Debtor's failure to preserve books and records to ascertain his financial condition or to evaluate assets or to assist the trustee in piecing together financial information from records which he produced is grounds for denial of discharge under Section 727(a)(3).

### APPLICABLE LAW AND DISCUSSION
#### A. 11 U.S.C. § 727(a)(2)(B)

11 U.S.C. § 727(a)(2)(B) provides that

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

> (B) property of the estate, after the date of the filing of the petition;

■ The intent of Section 727(a)(2)(B) is to deny discharge to a debtor who fails to disclose transactions regarding his assets subsequent to filing his petition in bankruptcy. *In re Wolmer*, 57 B.R. 128, 132 (Bankr. N.D.Ill.1986), *citing In re Devers*, 759 F.2d 751 (9th Cir.1985); *In re Milano*, 35 B.R. 89 (Bankr.S.D.N.Y.1983). Subsection 727(a)(2)(B) requires the denial of discharge if the debtor conceals property of the estate with intent to hinder, delay or defraud a creditor or an officer of the estate. *In re George*, 9 B.R. 9, 10 (Bankr.S.D.Fla.1981).

■ Based upon the uncontroverted facts presented, Debtor's transactions with Southern National Bank involving the 5 acres and chalet property, the Federici Deed of Trust and the shares of stock in NCV, Inc. constitute transfer or concealment of estate property within the meaning of Section 727(a)(2)(B). Debtor's execution of a second Deed of Trust on property of the estate improperly converted a pre-petition unsecured claim into an unauthorized post-petition secured claim for the benefit of Debtor and the Bank to the prejudice of other creditors. While Debtor has repeatedly claimed that he held as of the date of his bankruptcy petition only bare legal title as trustee under the Federici Deed of Trust on the 4.5 acres of property in North Carolina, he clearly had sufficient control over this mortgage receivable to arrange for the execution of documents to make himself the payee/beneficiary of the trust and to assign his right to payment under the Note to the Bank. The fact that Debtor was able to grant to the Bank as additional collateral the assignment of the Federici Deed of Trust demonstrates that Debtor had a property interest in this asset and was required to list this interest in his bankruptcy schedules. *U.S. Whiting Pools,*

*Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). By failing to disclose his real interest in the Federici Deed of Trust in his bankruptcy schedules and by hiding the transaction from the trustee, Debtor knowingly and deliberately concealed this property interest with the intent to hinder, delay or defraud creditors to keep this property under his own control and to use it to increase the bank's security and to reduce his debt to the bank.

■ The evidence shows that Debtor concealed his true interest in NCV, Inc. in order to keep this valuable asset from the reach of general creditors. The Bank's loan to Debtor's son secured by 30,000 shares of stock in NCV, Inc. was negotiated between Debtor and Carroll Garland in David's absence. [David Caserta deposition, p. 22–23]. Although the Stock Certificates are in the name of Debtor's son, it was Debtor who assumed the mortgage on NCV, Inc. property, initially managed the day to day affairs of NCV, Inc.'s business and had sufficient continuing control over the shares to pledge them to the bank as security for his own debt. Debtor has not explained the existence of a check for $100,000.00 written by him from his own account in January, 1990, which indicates on its face that it is for the repayment of 50% of shares of stock in NCV, Inc. [Exhibit 20] and which contradicts his own testimony on at least two separate occasions that he never owned any interest in that entity. Debtor's testimony about NCV, Inc. when he was questioned under oath at Rule 2004 Examinations by the trustee [Exhibits 16, 17] and later in a deposition in connection with this case [Exhibit 18] was evasive and deceitful, and reflects Debtor's deliberate and actual intent to conceal this asset from creditors.

The facts of Debtor's post petition transactions with the Bank, all of which are proven by the deposition testimony of the Bank officers and from the other depositions taken in the course of discovery, constitute grounds for denial of discharge under Section 727(a)(2)(B). Debtor has offered nothing to controvert any of these facts. Mere unsubstantiated denials on the part of Debtor, which is all that exists in the record, are

insufficient to overcome such a conclusive demonstration of the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2552. This record, taken as a whole, does not lead a rational trier of fact to find for Debtor. Accordingly, summary judgment in Tobin's favor on the issue of Section 727(a)(2)(B) is justified.

### B. *11 U.S.C. Section 727(a)(4)(A)*

11 U.S.C. § 727(a)(4)(A) provides that:

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

A discharge pursuant to 11 U.S.C. § 727(a)(4)(A) should not be granted where the debtor knowingly and fraudulently made a false oath or account in connection with the bankruptcy proceeding. *In re Chalik,* 748 F.2d 616, 618 (11th Cir.1984). Deliberate omissions may also result in the denial of a discharge. *In re Raiford,* 695 F.2d 521, 522 (11th Cir.1983). The subject matter of a false oath is "material" and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property. *Chalik,* 748 F.2d at 618, *citing In re Steiker,* 380 F.2d 765, 768 (3rd Cir. 1967). Even if the debtor's concealment of information by the making of a false oath involves worthless assets and would not have increased the value of the debtor's estate, even if disclosed, such circumstances do not excuse the debtor's lack of veracity with respect to stated information or omissions. *Chalik,* 748 F.2d at 618.

Knowingly fraudulent omissions from a sworn Statement of Affairs or Schedules may constitute a false oath. *In re Levine,* 107 B.R. 781 (Bankr.S.D.Fla.1989).

In response to question 12 of Debtor's Statement of Financial Affairs with respect to Suits, Executions and Attachments, Debtor lists two separate lawsuits involving "NCV". When questioned under oath by the trustee at a deposition on September 6, 1991 about the nature of the lawsuits and his interest in NCV, Debtor answered that NCV was part of the Shallowford Property (which Debtor explained to be townhouses in North Carolina "that were sold for almost what we paid for them about a year and a half ago."). Debtor denied that NCV was a corporation or a partnership and was vague and evasive when asked for more detail about the business of NCV, or Debtor's involvement therein. Debtor could not explain why NCV was a named defendant in the two lawsuits which were listed in his petition. Debtor indicated that he did not remember any details about NCV: "I got to find out what NCV is ..." "I'll find out for you and I'll give you all the details on it." [Transcript September 6, 1991, p. 24, lines 21–25; p. 50–52; Exhibit 16].

In a subsequent Rule 2004 Examination taken on January 31, 1992 by the trustee and certain creditors, Debtor testified that:

(a) He never owned any stock in NCV; that it was a "no-money-down-deal" for his son; because the son simply "took over the mortgage";

(b) He has no interest of any kind in NCV, Inc., a corporation which owns 75 acres of undeveloped land in Linville, N.C., nor did he ever do business as "NCV";

(c) He never loaned money to NCV, Inc., or paid any of its bills.

[Transcript, January 31, 1992; pp. 451–461; Exhibit 17].

On January 6, 1995 at a deposition of Debtor taken in connection with this case, Debtor swore again under oath that he did not have, nor did he ever have an interest in NCV, Inc.; that NCV, Inc. was a development of real property in Linville, North Carolina in which David Caserta, his son, held shares of stock. Rather than answer questions directly as to how his son acquired the shares of stock in NCV, Inc., Debtor referred to his prior deposition testimony on the subject. [Transcript January 6, 1995, pp. 66–71, Exhibit 18].

The veracity of Debtor's sworn statements with regard to NCV, Inc. is contradicted by a check written by Debtor on January 26, 1990 in the amount of $100,000.00 payable to the

"Mattson Rochetto & Christenson Trust Account" for the "repurchase in full of Salvatore Reale's 50% Stock Interest in NCV, Inc., and 50 acres of residential property Linville, North Carolina and 25 acres commercial property Linville, North Carolina." [Exhibit 20]. The check shows that Debtor purchased shares in NCV, Inc. and did at one time hold a substantial interest in NCV, Inc. The check demonstrates also that Debtor held back information about his involvement in NCV, Inc. and was untruthful about the information which he gave. The falsity of the statements is manifested by other evidence, including statements of Debtor's son who admitted that at the initial stages of the NCV, Inc. development, Debtor handled the assumption of the mortgage, managed the day to day affairs of the corporation and kept the books and records. [David Caserta's Deposition, February 1, 1995, pp. 10–11; p. 16, 11.12–25; p. 17, 11. 1–4].

Further, when asked to explain how he had arranged in April, 1992 for a $61,052.75 loan from the Bank to his son, secured by 30,000 shares of stock in NCV, Inc., the proceeds of which were used to pay down Debtor's second mortgage debt, Debtor stated under oath that the $61,052.75 loan was in repayment of the funds which Debtor had given to his son in September, 1990 to put into the NCV, Inc. development from proceeds of his own $90,000.00 loan transaction. However, the Bank's records and testimony demonstrate that there were no proceeds received by Debtor from the September, 1990 Note, because all such proceeds went to pay off two previously existing Notes which remained outstanding. Garland testified that Debtor's son borrowed the $61,052.75 from the Bank "to protect the personal guarantee his mother had given to the Bank", testimony which also contradicts Debtor's sworn statements. Debtor's omission of any interest in NCV, Inc. from his Schedules or Statement of Financial Affairs and his denial under oath of any interest or involvement in NCV, Inc. in the face of the $100,000.00 check written in 1990 from his own account for the repurchase of shares of stock in NCV, Inc. and in light of the deposition testimony of others evidences a deliberate and actual intent to hide this asset from the reach of creditors so that he could utilize this asset for his own purposes post-petition.

Debtor has offered no evidence to refute or rebut Tobin's demonstration that Debtor not only omitted material facts relating to his interest in NCV, Inc. on his Schedules and Statement of Financial Affairs, but when specifically questioned about his interest in NCV, Inc., he gave false testimony. When given the opportunity in Interrogatories propounded by Tobin to explain the existence of the check in light of prior testimony, Debtor offered no explanation.

Debtor has provided no explanation for such material omissions or for his inconsistent testimony with respect to NCV, Inc. Debtor has not offered a single deposition or affidavit or evidence of any kind to show that there is a genuine issue for trial on this claim. Tobin's statement of facts in support of his claim under 11 U.S.C. § 727(a)(4)(A) are amply supported by the record. In the absence of any genuine issue of material fact in dispute, Tobin is entitled to judgment as a matter of law as to his claims under this subsection of the Code.

### C. 11 U.S.C. § 727(a)(3) and (5)

Sections 727(a)(3) and (5) of the Bankruptcy Code provide:

(a) The court shall grant the debtor a discharge, unless—

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

■ While the question of whether a debtor has satisfactorily explained the loss of assets is a question of fact, the debtor's explanation must consist of more than a

vague and indefinite "hodgepodge" of financial transactions with little or no documentation to back up such explanation. *In re Chalik*, 748 F.2d at 619; *In re Levine*, 107 B.R. 781, 785 (Bankr.S.D.Fla.1989).

On March 14, 1991, the date of the filing of the bankruptcy petition, Debtor had no assets to show for liabilities in excess of $7 million. On Debtor's A–3 Schedules, he lists some fifty pages of creditors. The amount of indebtedness to this list of creditors is, in the majority of cases, unknown. Debtor lists known debts in the amount of $6,824,702.67.

Meanwhile, on a personal financial statement delivered to Southern National Bank dated May 27, 1990 ("Financial Statement"), just ten months prior to his bankruptcy filing, Debtor lists total assets as having a value of $6,851,878.00. Debtor states his net worth to be $4,666,118.00. Attached to the Financial Statement are lists of "partial interests in real estate equities", mortgage receivables, and real estate holdings in Debtor's own name as of May 27, 1990. [Exhibit 3].

By Interrogatories served on Debtor on March 7, 1995, Debtor was asked to explain in detail the disposition of assets listed on the Financial Statement. As to the mortgage receivables listed on the statement in the aggregate amount of $335,378.00, Debtor states only that he "has no recollection of collecting any sums from the accounts receivable, totaling $335,378.00 .... nothing was collected on any of these items after May 27, 1990 or before or after the commencement of these proceedings." "Debtor has no independent recollection of transactions that may have occurred seven years ago."

By Interrogatory, Debtor was also asked to provide a detailed and itemized account of the disposition of all of his partial interests in real estate equities aggregated at $5,311,500.00 as set forth in the Financial Statement. Debtor was asked to indicate whether he owned on the date of the filing of the petition in bankruptcy any partial equity interest in any of the properties listed, and, if not, to state with particularity how his interest in such properties were transferred or terminated.

Debtor's response to this request for information was vague and inadequate and did not explain the disposition of the assets. For example, Debtor states that with respect to his interest as trustee in real estate located in Key Largo, Florida, which he valued at $412,500.00, Debtor offers the following explanation:

> "This property was condemned by the Federal Government in 1976. In 1988 the debtor relinquished his interest to his brother, R. Caserta. After 1988 this matter was settled and the beneficiaries of the trustee, R. Caserta, Ralph Fish, Gerald Tobin, and others received the proceeds. The debtor received nothing from this settlement." [Exhibit 21; Page 3 of Exhibit "A"].

Debtor does not explain when, after 1988, the matter was "settled", or the amount of the settlement, or what happened to Debtor's $412,500 stated interest in the property on May 27, 1990. As another example, with regard to an item listed as "Caserta Trustee, Brevard County", listed by Debtor as having a value of $5,000.00 as of May 27, 1990, Debtor responds as follows:

> "This property was sold prior to the commencement of these proceedings and the proceeds were distributed to the beneficiaries. The record in these proceedings reveals nothing of the settlement and distribution." [Exhibit 21; Page 3 of Exhibit "A"].

This response provides no information about when the property was sold, or what happened to the $5,000.00 equity interest which Debtor purportedly held in the property on May 27, 1990. The statement "the record in these proceedings reveals nothing of the settlement and distribution," is vague and unresponsive.

In the list of mortgages receivable included in the Financial Statement, Debtor names an item styled "Tripodo Trustee, Brevard County, Florida". The value of the mortgage receivable is listed at $5,878.00 as of May 27, 1990. Debtor's response to the Interrogatory is as follows:

> "This property was sold in 1989 by its Trustee. The debtor had a beneficial in-

terest which was transferred in 1989 and did not constitute a portion of the debtor's estate." [Exhibit 21; Page 4 of Exhibit "A"].

Debtor's response is inconsistent with the information in the Financial Statement. If Debtor's beneficial interest was transferred in 1989, one must ask why it was listed as an asset in 1990. Likewise, with respect to the item styled "James Alton, Titusville, Florida" another receivable listed as having a value of $28,000.00 as of May 27, 1990, Debtor's explanation under oath is that he "believes this mortgage was satisfied and the proceeds were divided between him and his brother. All of this was accomplished years before the commencement of these proceedings." [Exhibit 21; Page 4 of Exhibit "A"]. With respect to the "John Rodes Sarno Associates" receivable, valued by Debtor at $193,000.00 as of May 27, 1990, Debtor explains that his "wife, Lilla Caserta had a beneficial interest in this mortgage. The Trustees were Mr. Goldstein and Mr. Gettis. These Trustees foreclosed the property and now hold the mortgage for five or six beneficiaries as Trustees, including Debtor's wife." [Exhibit 21; Page 4 of Exhibit "A"].

The answers to Tobin's Interrogatories offer no plausible explanation for the deficiency of assets as of the date of the filing of the bankruptcy petition. The responses are replete with inconsistencies. Further, when the responses to the Interrogatories are reviewed in conjunction with the information provided on Debtor's Financial Statement, the only conclusion to be drawn is that either Debtor grossly inflated his net worth as of May 27, 1990 by listing assets which had already been sold, or in which Debtor held no equity, or which had been condemned by the Federal Government, or Debtor has given inaccurate information in his Answers To Interrogatories. One thing is clear: Debtor has not explained in any coherent or consistent manner the loss of assets.

Debtor's Schedules and Statement of Financial Affairs are equally vague and indefinite. As has been previously stated in answer to question 12 of Debtor's Statement of Financial Affairs, Debtor attaches a schedule listing approximately 25 lawsuits involving

Debtor and other parties. Debtor's response to question 12 is incomplete, as it does not provide information with respect to property having been "attached, garnished, or seized under any legal or equitable process within a year immediately proceeding the filing of the original petition". The response to question 12 does not provide information, in instances where foreclosure actions are involved, as to the property concerned, the nature of Debtor's interest therein or whether the foreclosure has been completed to the point where title in the property had passed.

In the Interrogatories propounded on Debtor, Tobin requested that Debtor provide a detailed and itemized account of: the properties which Debtor owned as of the date of the filing of the bankruptcy petition; any transfers, sales, or other disposition of such property which occurred within a year of the bankruptcy filing; and how the market values given on the Personal Financial Statement dated May 27, 1990 were derived. Tobin also requested copies of any appraisals of property which were made for purposes of the Financial Statement and any other information which might be necessary to explain the status of the real property listed on the Financial Statement. [Exhibit 21; Question 3(c)].

**Debtor's response to the Interrogatories was simply that "all appraisals and other information are in the hands of the trustee." [Exhibit 21; Page 8].**

■■■■ Debtor offers no information at all to further explain or clarify his incomplete response to Question 12. As for any supporting documentation, Debtor states that he need do no more than turn over records at the commencement of the case and that it is either the trustee's or the creditor's burden to try to piece together what has happened to the assets. Debtor has repeatedly refused to look for specific documents in response to questions by the trustee and other creditors in the course of 2004 examinations. [Excerpt of Rule 2004 Examination; 12/23/91 Part III; Exhibit 22]. Debtor's response that documents are in the hands of the trustee is not an excuse. There was nothing to prevent Debtor or his counsel from reviewing all

documents in the possession of the trustee. All Debtor had to do was ask for an appointment to review them. The trustee or creditors are not required to play detective and ferret out the documents of a debtor to reconstruct financial records. *In re Levine,* 107 B.R. at 783. The fact that Debtor turned over several boxes of records to the trustee at the commencement of the case is not enough. Debtor is under an affirmative duty to assist the trustee in reconstructing records and piecing together information. *Id.* at 783. The record demonstrates that Debtor has failed to meet his duty in this regard. Tobin has demonstrated that Debtor has not satisfactorily explained the deficiency of assets to account for his substantial liabilities and he has not preserved enough records from which his financial condition or business transactions might be ascertained. The record shows only vague, indefinite and often inconsistent explanations. Debtor has offered nothing to raise a genuine issue of material fact in dispute from which the trier of fact might reasonably find for Debtor on this claim under Section 727(a)(3) and/or (5).

### D. *Debtor's Response And Cross Motion For Summary Judgment*

■ Debtor's Response and Cross Motion For Summary Judgment do not address the substantive issues of fact or law presented in Tobin's motion for summary judgment. Rather, Debtor contends that as a consequence and/or legal effect of prior proceedings, neither Tobin nor either of the other Plaintiffs has a right to prosecute actions to bar Debtor's discharge. Debtor points to the fact that Caron Balkany (individually, or on behalf of her Professional Association or as Trustee of Malabar Land Trust and/or Timberlakes Resorts, Inc.) brought three adversary proceedings in bankruptcy court, all of which were dismissed with prejudice following settlement and all of which contained claims for denial of discharge under Section 727; that as a result of the stipulations and settlements of these adversary proceedings, all Plaintiffs are now precluded from asserting such claims, including Tobin, who was a beneficiary of the Malabar Land Trust and a shareholder of Timberlakes Resorts, Inc. Debtor also argues that in 1988, Tobin and others instituted a lawsuit against Anthony S. Caserta and others in the United States District Court for the Southern District of Florida (Case No. 88–1859–CIV–MORENO); that since the district court litigation concerned issues relating to Bayshore Bank, the dismissal with prejudice of that case precludes Tobin from asserting his Section 523 claim against Debtor under the doctrines of *res judicata* and collateral estoppel and that, therefore, Tobin is not a creditor who is entitled to prosecute an action under 11 U.S.C. § 727. Debtor also argues that Caron Balkany's recent voluntary dismissal of the action following the settlement with Southern National Bank has the effect of dismissing the entire action, including Tobin's Section 727 claims against Debtor.

■ Most, if not all of the arguments advanced by Debtor, have been raised, briefed and argued in prior proceedings and determined against Debtor in prior orders. The settlement of adversaries numbers 92–0072, 92–0128 and 92–0203 do not preclude Tobin from prosecuting his claims and causes of action under 11 U.S.C. § 523 and/or 727. Tobin was not a party to any of these adversary proceedings, nor did he sign any of the stipulations of settlement. Tobin, therefore, is not bound by any of the settlements arrived at by or among the parties to those proceedings. Furthermore, Tobin continued to obtain extensions of time for filing a complaint objecting to Debtor's discharge under both Sections 523 and 727. The record is replete with pleadings and orders which preserve Tobin's right to bring such actions. The Court has reviewed this issue in detail in its Memorandum Opinion of March 8, 1995 in connection with Tobin's motion for leave to amend his complaint and has established beyond cavil that Tobin's claims under Sections 523 and 727 were timely brought. The March 8, 1995 Order also establishes that Tobin is a creditor, that he has standing to prosecute his claims under Section 727 of the Bankruptcy Code and that he is not required to prove or liquidate his Section 523 claim against Debtor before proceeding to trial on the Section 727 claims. In light of the March 8, 1995 Order, Debtor's position that Tobin is not a creditor or that there is no merit to his

claim for damages for fraud against Debtor are contrary to the law of the case.

 The issue of whether the case brought in district court pre-petition in which Tobin was a plaintiff and Debtor was a defendant ("Pullen Litigation") precludes Tobin from bringing his claims against Debtor under the doctrines of *res judicata* or collateral estoppel was raised and decided in Tobin's favor in connection with Debtor's motion to dismiss and motion for judgment on the pleadings in Adversary Case No. 94–0075 approximately one year ago. The Court reiterates its conclusion after reviewing the pleadings and orders of Judge Moreno in connection with the Pullen Litigation, that since the action was stayed as against Debtor because of his filing of bankruptcy, there was never a final adjudication of this cause of action against Caserta so as to invoke the applicability of claim preclusion doctrines. (The Court does not reach the issue of whether res judicata or collateral estoppel would apply even if the district court case had been adjudicated on the merits as to Debtor).

 Caron Balkany's notice of voluntary dismissal of the action in connection with the settlement with the Bank is deemed to be an acknowledgment of Ms. Balkany's waiver of her right to object to Debtor's discharge as a result of the settlements of her own prior adversary proceedings against Debtor. Her unilateral action does not affect the rights of the other party plaintiffs. The question of whether the trustee has the right to prosecute an action to bar Debtor's discharge is presently under advisement in connection with a prior motion of Debtor. For all of these reasons, Debtor's Cross Motion For Summary Judgment is denied.

The evidence presented demonstrates grounds for the denial of Debtor's discharge under 11 U.S.C. Sections 727(a)(2)(B), 727(a)(4)(A) and 727(a)(3) and (5). Tobin has met his burden of proof to show that no genuine issue of material fact is in dispute and he is entitled to summary judgment as a matter of law. Accordingly, Tobin's Motion For Final Summary Judgment is granted as to all three Counts under 11 U.S.C. § 727. The discharge of Debtor is denied. A sepa-

rate final judgment will be entered pursuant to Bankruptcy Rule 9021.

### *FINAL SUMMARY JUDGMENT*

In conformity with the Memorandum Decision and Order Granting Tobin's Motion for Summary Judgment, Denying the Debtor's Cross Motion for Summary Judgment and Denying Discharge of the Debtor, final summary judgment is hereby entered in favor of Gerald J. Tobin. The debtor's discharge is denied pursuant to 11 U.S.C. §§ 727(a)(2)(B), 727(a)(4)(A) and 727(a)(3) and (5).

DONE AND ORDERED.